Syllabus.

# TERRITORY *v.* A. M. CABRINHA.

## No. 1150.

RESERVED QUESTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT.

HON. C. K. QUINN, JUDGE.

SUBMITTED JANUARY 2, 1919.          DECIDED JANUARY 21, 1919.

COKE, C. J., KEMP AND EDINGS, JJ.

INDICTMENT—*accused as witness before grand jury.*

It is not sufficient ground to quash an indictment that the indicted person was subpoenaed to appear and did appear and testify before the grand jury as to matters material to the offense charged in the indictment, when it appears that he was informed of his right to refuse to answer any question the answer to which in his opinion might tend to incriminate him.

OPINION OF THE COURT BY KEMP, J.

(Coke, C. J., dissenting.)

On the 27th day of August, 1918, A. M. Cabrinha, a member of the board of supervisors of the County of Hawaii, was indicted for alleged violations of section 168, R. L. 1915.

The defendant has filed a motion to quash said indictment alleging "that the said A. M. Cabrinha was required by a subpoena to appear on the 26th day of August, 1918, before the said grand jury as a witness while the said indictment and the charges of violation of section 168 of the Revised Laws of Hawaii therein contained were pending before the said grand jury, and while they were inquiring into said charges and considering the question whether they would find the said indictment to be a true bill; and that he, the said A. M. Cabrinha, did appear in obedience

to said subpoena and was sworn and examined and required to testify and did testify to matters and things relating to, and material to, the charges made in the indictment against him, and in each and all of the counts thereof; this without having been informed or having knowledge that the grand jury had under consideration any matter involving a criminal charge against him, the said A. M. Cabrinha."

The facts were tried upon the affidavits of defendant and the foreman of the grand jury from which the circuit judge has found and certified the facts substantially as follows: That on August 23 the said A. M. Cabrinha was subpoenaed to appear before the grand jury on August 26 as a witness; that in response to said subpoena he did so appear on said August 26, whereupon he was sworn as a witness, after which and before he was interrogated he was advised by the deputy attorney general in the presence of the grand jury that the grand jury desired to ask him certain questions concerning matters then under investigation by said grand jury, and further that if any question should be propounded to him, an answer to which, in his opinion, might tend to incriminate him in any way he might refuse to answer such question; that the deputy attorney general thereupon propounded to him, in the presence of the grand jury, certain questions and in response thereto he made statements as to the business of Cabrinha & Company named in said indictment, and as to the ownership of said business and the names of the partners and persons pecuniarily interested in the business transacted by said firm, said matters and things relating to and being material to the charges made in said indictment; that testimony as to these matters had previously been given by other witnesses; that at the time of his examination as a witness he did not know and was not informed that his own conduct was under investigation;

that he did not request an opportunity to consult an attorney but answered all questions without objection, except one, the nature of which is not disclosed, which he refused to answer on the ground that an answer thereto might tend to incriminate him.

The circuit judge believing that it is in the interest of justice that the questions of law presented by the facts upon said motion shall first be determined by this court has reserved the following questions:

(1)  "Should an indictment be quashed when it appears that the defendant was compelled by subpoena to attend before the grand jury, and give material testimony, without knowing that his own conduct was under investigation?"

(2)  "Upon the facts found by the trial court, as above set forth, should the motion to quash the indictment be granted?"

The first question is not sufficiently comprehensive to make an answer to it of value in this case and is therefore returned unanswered.  However, an answer to the second question is all that is necessary to apprise the circuit judge of the law applicable to the facts before him.

The question is, are the above facts sufficient to vitiate the indictment?  This question involves that portion of the Fifth Amendment to the Constitution of the United States which provides: "Nor shall any person  *  *  *  be compelled in any criminal case to be a witness against himself."

Our first concern is to determine whether under the circumstances of this case the defendant was "compelled," as that term is used in said amendment, to be a witness against himself, or was his testimony voluntarily given?  If he was compelled to be a witness against himself his constitutional right was invaded and the indictment which resulted from his so being compelled is invalid and should

be abated, while if he voluntarily gave evidence against himself he has no just cause of complaint. Whether one has been compelled to be a witness against oneself must be determined in each case from the facts of that case. It certainly would not be seriously contended that being subpoenaed and appearing before the grand jury was a violation of this constitutional right, nor his being sworn before that body, nor testifying upon any matter that did not tend to incriminate him even though he was "compelled" in all of these particulars. All of these things the law compels him, in common with other citizens, to do. Up to the point then where the interrogation of defendant as a witness on the matters of which he complains began nothing took place which could be said to have violated his constitutional right and if he, after being advised, as he was, of his right to refuse to make self-incriminating answers, gave his testimony voluntarily and without objection, no matter how incriminating it was, no constitutional guarantee was invaded by the proceeding. Immunity from compulsion in the matter of becoming a witness against oneself is a personal privilege which may be waived as may any other personal privilege.

"It is well settled that a witness cannot claim his constitutional privilege until he is sworn. He must take the oath, so that his assertion of privilege shall be made under that sanction." *United States* v. *Kimball*, 117 Fed. 156, 163.

From the fact that one cannot claim one's constitutional privilege until after taking the oath it necessarily follows that the constitutional privilege cannot until that time be violated. It cannot be violated before it can be invoked. Compulsion, then, does not arise from the summoning, swearing and examination of the witness on matters which do not tend to incriminate him.

It will now be considered whether the additional facts,

that the witness did not know at the time of his examination that his own conduct was under investigation and made self-incriminating statements without objection after being fully advised of his rights in the matter, will render his statements involuntary and vitiate the indictment.

It is not contended that the defendant was not advised of his right to refuse to make self-incriminating statements or that he raised any objection to answering any of the questions of which he now complains. The complaint is that he did not know and was not advised that his conduct was the subject of investigation and that he, therefore, cannot be held to have given his testimony voluntarily.

In the case of *United States* v. *Edgerton*, 80 Fed. 374, cited by defendant and confidently relied upon in support of his proposition that one cannot be said to have acted voluntarily who gave his testimony without knowing that his own conduct was under investigation it does not appear that the defendant was advised of his right to refuse to give self-incriminating evidence. This fact robs the opinion in that case of any particular application to the case at bar where the defendant when called before the grand jury was fully advised of his right to refuse to give self-incriminating evidence. What effect then, if any, should be given to the fact that the defendant was so advised? From 22 Cyc. 423, we quote the following:

"An indictment will be quashed where defendant was called to testify before the grand jury as to the matter from which it resulted, without knowing or being informed that his own conduct was under investigation, and although such is not a statutory ground for quashing the indictment. But where defendant has been advised of his right to decline to answer upon the ground of self-incrimination it has been held that his voluntary testimony is not ground for quashing."

In support of the last sentence of this text the case of

*State* v. *Donelon,* 45 La. 744, 12 So. 922, is cited in the foot note and defendant has undertaken to avoid the force of the text and said decision by pointing out that the defendant in that case knew when he appeared before the grand jury that his own conduct was under investigation and that the case does not therefore support the text. It is true that the defendant in that case must have known at the time he testified before the grand jury in a general way, although he was not told, that his own conduct was under investigation, since it appears that at the time he was incarcerated in jail under an accusation pending against him and several others in the recorder's court for the same offense, without benefit or bail. But regardless of whether the text is supported by the authority cited we regard the rule there announced as sound.

We do not think the fact that the defendant was not told before giving his testimony that his own conduct was under investigation rendered his testimony involuntary since he was advised of his right to refuse to answer any question the answer to which in his opinion might tend in any way to incriminate him. He must be assumed to be a man of ordinary intelligence and to be able to differentiate between statements which would and those which would not tend to incriminate him. Had he known that his own conduct was under investigation how could that knowledge have aided him in determining whether or not his answer to any given question might have a tendency to incriminate him? When he was advised of his right to refuse to answer he was placed on his guard and if he failed to avail himself of his privilege he must be deemed to have waived it and to have testified voluntarily, hence his constitutional privilege was not invaded.

"In all cases where a personal privilege exists for a witness to testify or not, if such witness does testify without objection he will be deemed to have done so voluntarily. How could there be compulsion or legal restraint, when

there was no law which could compel Lauder to testify to criminating matters against himself, or punish him for refusing to testify?" *People* v. *Lauder,* 82 Mich. 109, 119, 120.

The first question is returned not answered and the second question is answered in the negative.

*J. Lightfoot,* Deputy Attorney General, for the Territory.

*J. W. Russell* and *W. H. Smith* for defendant.

### DISSENTING OPINION OF COKE, C. J.

The affidavit of the defendant herein shows and it was found and is certified by the circuit court to be a fact that at and during the examination the defendant was wholly ignorant of the fact that the charges in the indictment were being inquired into by the grand jury. The subpoena requiring the defendant to appear before the grand jury does not contain the slightest intimation of the nature of the investigation being conducted. There are instances where the subpoena, the nature of the questions propounded or other circumstances should clearly indicate to a person of ordinary intelligence that his own conduct was under scrutiny. In such a case it would perhaps be unnecessary to advise the witness of the nature of the investigation, as also where the witness is a lawyer it might not be deemed necessary to advise him of his constitutional right to refuse to give self-incriminating evidence. But in the present case the record conclusively shows that the defendant was not aware of the nature of the investigation. It appears that the questions propounded to defendant while before the grand jury had to do with the business of the firm of Cabrinha & Company and particularly respecting the names of persons having pecuniary interests therein. This information might have been required by the grand jury in an inquiry in which the conduct of the defendant was in no way connected. Under

these circumstances it was not sufficient to merely advise the witness of his right to refuse to make self-incriminating statements but in addition thereto he should have been advised that his conduct was under fire in order that he might determine whether or not his answers to the questions propounded would tend to incriminate him.

In the case of the *United States* v. *On Tai*, 3 U. S. Dist. Ct. Haw. 491, the defendant prior to his indictment was subpoenaed by the grand jury and conducted before it by the United States marshal. After the witness was sworn he was advised by the United States attorney that he need not answer any questions if he did not want to and that he had a right to refuse to answer all questions. He then gave self-incriminating evidence and was subsequently indicted. Thereafter he moved to quash the indictment upon the same grounds as are presented in the case at bar. In the opinion in that case, which was written by a former chief justice of this court, the indictment was sustained although the procedure was severely criticized. But, as contradistinguished from the present case, the court there found from the evidence of the defendant and from the fact that the property of the Federal government which it was alleged he unlawfully purchased from a soldier was taken from his house at the time he was subpoenaed and was exhibited before him in the grand jury room, that he was aware of the nature of the inquiry being conducted by the grand jury. The court said, "I do not hesitate to express my disapproval of the calling of the defendant in this case before the grand jury under the circumstances shown. * * * But, having been sent for, the fact that his conduct was being investigated should have been clearly explained to him and, to have been absolutely fair, an opportunity should have been given him to consult with counsel even though he was not entitled to the assistance of counsel as he would be if on trial. But in view of the fact that

he had a general idea of the subject of investigation, derived from the surrounding circumstances, and must have known that he was at least under some suspicion in connection with the alleged purchase of clothing and that he was, as he admits, fully advised of his right to refuse to answer questions it can hardly be said that he was compelled to give evidence against himself." The court in that opinion quotes with approval the language employed in *United States* v. *Kimball,* 117 Fed. 156, where the rule is laid down "that where the acts or conduct of a particular person who is under suspicion are being inquired into and that person is called as a witness he should be apprised of the fact that he is under fire and advised as to his right to refuse to answer questions which may tend to incriminate him." The maxim *nemo tenctur seipsum accusare* had its origin in a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons which had long obtained in Continental Europe and which until the expulsion of the Stuarts from the English throne in 1688 and the erection of additional barriers for the protection of the people against the exercise of arbitrary power was not uncommon in England. The celebrated trial of Sir Nicholas Throckmorton and Udal, the Puritan minister, made the system so odious as to give rise to a demand for its total abolition. The change in the English criminal procedure in that particular seems to be founded upon no statute and no judicial opinion but upon a general and silent acquiescence of the courts in a popular demand. But however adopted it has become firmly imbedded in English as well as American jurisprudence. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the States with one accord made a denial of the right to question an accused person a part of their fundamental law so that a maxim which in England was a mere rule

of evidence became clothed in this country with the impregnabilities of a constitutional enactment. It has found engraftment into the various state constitutions and was written by the people of the Union through the medium of James Madison into the Federal Constitution. It secures a right of personal liberty which Congress itself cannot revoke and which no court should attempt to withhold. Any attempt to extort from a witness evidence for the purpose of indicting him for a criminal offense is a proceeding which cannot abide the pure atmosphere of political liberty and personal freedom.

In the majority opinion it is held that the case of *United States* v. *Edgerton,* 80 Fed. 374, does not apply here because in that case it does not appear that the defendant was advised of his right to refuse to give self-incriminating evidence. That question was not before the court in the *Edgerton* case and no point was made of it. The decision is based solely upon two points, first, respecting the presence in the grand jury room of a person who it was claimed had no right there, and second, "that the defendant was required by a subpoena to appear before the grand jury as a witness and that he did appear in obedience to such subpoena and was sworn and examined and required to testify to matters and things relating to and material to the charge made in the indictment against him and this without being informed or having knowledge that the grand jury had under consideration any matter involving a criminal charge against him." And the court in passing upon the second ground presented used the following clear and emphatic language: *"It is fatal to the indictments that the defendant was called to testify in the particular matter from which they resulted without being informed or knowing that his own conduct was the subject under investigation."*

I cannot conceive of language more clearly applicable

to the case at bar. The defendant in this case was subpoenaed and in obedience to the subpoena appeared before the grand jury and gave evidence. The circuit court certifies that he was wholly ignorant of the fact that the charges in the indictment were being inquired into by the grand jury and upon the evidence of the defendant, together with other evidence, an indictment was returned against him charging him with the crime. The opinion in *Edgerton* case, so far as I am aware, has never been overruled. In fact it has been favorably commented upon and adopted by courts of other jurisdictions. See *State* v. *Faulkner*, 175 Mo. 546, 610, 611. The court of general sessions in New York in dealing with the same subject in *People* v. *Haines*, 1 N. Y. S. 55, also held that a defendant called before a grand jury should be informed of the charge against him. See also *People* v. *Singer*, 18 Abb. N. C. 96. The authorities uniformly hold that rights conferred by constitutional grant must have broad and liberal construction and application.

The majority opinion, while recognizing the necessity of advising a witness of his constitutional privilege to refuse to give self-incriminating evidence, denies him the right to know the nature of the inquiry. The latter I think is equally as essential as the former, for how can a witness determine whether his evidence may or may not incriminate him if he be in total darkness as to the matter under investigation.

In my opinion the motion to quash should be granted. The cause can then be resubmitted to another grand jury free from any violation of the constitutional rights of the defendant.