**Electronically Filed
Supreme Court
SCPW-11-0000086
18-MAY-2011
02:08 PM**

NO. SCPW-11-0000086

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---

JENNIFER P. NAIPO, Petitioner,

vs.

THE HONORABLE PATRICK W. BORDER, JUDGE OF THE CIRCUIT
COURT OF THE FIRST CIRCUIT, STATE OF HAWAIʻI;
ESHELL MITCHELL; ALBERT H.D. YUEN, OR HIS SUCCESSOR
TRUSTEE, AS TRUSTEE OF THE ALBERT H.D. YUEN REVOCABLE
TRUST; ARNETTE YUEN; NADINE MACHADO; ROBERT YUEN; and
NANEA YUEN, Respondents.

---

ORIGINAL PROCEEDING
(CIVIL NO. 09-1-1147-05)

MAY 18, 2011

RECKTENWALD, C.J., NAKAYAMA, ACOBA, AND DUFFY, JJ.
AND CIRCUIT JUDGE TRADER, ASSIGNED BY REASON OF VACANCY

Per Curiam.  In this original proceeding, petitioner Jennifer Naipo, a non-party in circuit court Civil No. 09-1-1147-05, petitions this court for a writ of mandamus directing respondent the Honorable Patrick W. Border (the respondent judge) to vacate a February 9, 2011 order directing production of petitioner's medical records to the respondent judge for *in camera* inspection in Civil No. 09-1-1147-05.  The respondent judge ordered production over petitioner's claim of privacy under

the Hawaiʻi Constitution, Article I, Section 6 (right of privacy) and petitioner's claim of privilege under Hawaiʻi Rules of Evidence (HRE) Rule 504 (physician-patient privilege).

Based on the following, we conclude that petitioner's medical records are protected by petitioner's constitutional right of privacy and by petitioner's physician-patient privilege that was not waived. Consequently, we grant the petition for a writ of mandamus and vacate the respondent judge's February 9, 2011 order directing production of petitioner's medical records.

## I.   Background

Plaintiff Eshell Mitchell sued the Albert Yuen family[1] (the Yuens) in circuit court Civil No. 09-1-1147-05 for multiple leg injuries she suffered on February 22, 2008 when she was bitten by the Yuens' dog, Braddah, at the Yuens' home. Mitchell was temporarily residing with the Yuens at the time of the incident, as was Jennifer Naipo, the nineteen-year-old half-sister of Nanea Yuen.

Mitchell's claim for negligence was partly based on her claim that Braddah had bitten Naipo several months before biting Mitchell. Mitchell testified at a June 30, 2010 deposition that Naipo had been playing with the Yuens' five dogs outside the Yuens' house when Mitchell, from inside the house, heard Naipo

---

[1] Albert Yuen, Arnette Yuen, Nadine Machado, Robert Yuen, and Nanea Yuen.

2

scream and, upon going outside, saw a "gouge" on Naipo's forehead and was told by one of the Yuens' children that "Braddah bit Jennifer." Mitchell testified that Naipo was taken, by Nanea Yuen, to the hospital, where she received stitches to her forehead.

The Yuens, in answers to interrogatories, denied that any of their dogs, including Braddah, had ever bitten anyone before Mitchell was bitten. Robert Yuen and Nadine Machado both testified at October 20, 2010 depositions that Naipo received the stitches to her forehead when she fell down the stairs at the Yuens' home and hit her head on a cement block.

The Yuens deposed Naipo on October 28, 2010. Naipo appeared without counsel. She was advised by the Yuens' counsel, before questioning, as follows:

> It's unlikely that anybody is going to ask you any questions that are truly improper, but if anybody does ask you a question that invades your personal privacy, asks about your sex life or something like that, you can refuse to answer and the judge would eventually rule on whether it's a proper question or not. . . . I just want to let you know that that option is available if you feel like you're truly imposed upon with improper questions.

Naipo acknowledged the advice and thereafter answered all questions without refusal. She testified that she had never been bitten by Braddah and that her forehead injury was the result of a fall outside the Yuens' home while playing with the Yuens' dogs. She testified that she was not taken to the hospital for

the forehead injury and that Nanea Yuen herself treated the injury by stitching it at the Yuens' home.  She further testified that she had been bitten on her arm by the Yuens' dog, Misty, and that she was taken, by Nanea Yuen, to Wahiawa General Hospital where she was treated with a local anesthesia, stitches to her arm, and a rabies shot.

Mitchell deposed Nanea Yuen on November 10, 2010. Nanea testified that Naipo was bitten by Misty on the forehead, not on the arm, she was with Naipo when the dog bite occurred, and she took Naipo to Wahiawa General Hospital where Naipo received stitches to her forehead for the injury.

The differing testimonies by Naipo and the Yuens as to the cause of Naipo's forehead injury lead Mitchell, on November 22, 2010, to issue a subpoena duces tecum to Wahiawa General Hospital for production of "any and all medical records, reports, correspondence, billings, etc. from 2003 to the present pertaining to Jennifer Puumaikai Naipo."

Naipo was notified of Mitchell's subpoena, she retained counsel, and, on December 8, 2010, she moved to quash the subpoena.  She asserted that the information sought from Wahiawa General Hospital was protected from disclosure under HRE Rule 504, the Hawai'i Constitution, Article I, Section 6, and the federal Health Insurance Portability and Accountability Act of 1996.  The motion was opposed by Mitchell, who argued that Naipo

4

must disclose all records of communications with medical personnel at Wahiawa General Hospital because she answered questions at the October 28, 2010 deposition about medical treatment she received for the injury to her arm.

The respondent judge heard and denied the motion to quash on January 12, 2011.  He entered, on February 9, 2011, an order directing Wahiawa General Hospital to forthwith turn over, to the circuit court, "the records of Jennifer Naipo requested in the [November 22, 2010] Subpoena Duces Tecum."  The order further stated that:

> This Court will conduct an in camera inspection of said records and will decide which records, if any, shall be turned over to Plaintiff's counsel and counsel for the other parties in the case. In the event that the Court determines that health and/or medical information of Jennifer Naipo is subject to disclosure in this case, the parties and Jennifer Naipo shall execute a Stipulated Qualified Protective Order which prohibits disclosure or use of the information other than for this case.

Naipo moved for and was granted a stay of the February 9, 2011 order pending a petition for a writ of mandamus to vacate the order.

Naipo petitioned this court for mandamus relief on February 14, 2011.  She asserts that she is entitled to mandamus relief because the February 9, 2011 order is not immediately appealable and it releases her health information that is protected by her right to privacy under the Hawaiʻi Constitution,

5

Article I, Section 6, and by her physician-patient privilege under HRE Rule 504.

As to her physician-patient privilege, Naipo argues that: (1) medical records of non-parties are protected by the physician-patient privilege; (2) she did not waive her physician-patient privilege because waiver requires a voluntary disclosure and disclosure by deposition is not voluntarily; and (3) her privilege against the disclosure of her medical records is violated by an *in camera* inspection of the records by the respondent judge.

The respondent judge and Mitchell were directed to answer Naipo's petition. In answering, they argue that the information sought from Naipo's medical records is not "highly personal" or "intimate." The respondent judge further argues that *in camera* inspection of Naipo's medical records does not amount to production of the records. Mitchell also argues that: (1) the February 9, 2011 order protects against needless disclosure of Naipo's medical records; (2) Naipo's constitutional right to privacy of her medical records is not absolute and must be balanced against Mitchell's competing interest in the records; (3) Naipo waived her physician-patient privilege under HRE Rule 511 by voluntarily disclosing, at her deposition, significant facts about her medical treatment for her arm injury; and (4)

6

subpoenaed testimony is voluntary where the testimony is given without asserting a privilege.

## II.  Standard for Disposition

"The supreme court shall have jurisdiction and power . . . to exercise original jurisdiction in all questions arising under writs directed to courts of inferior jurisdiction and returnable before the supreme court."  Hawaiʻi Revised Statutes (HRS) § 602-5(3) (Supp. 2010).

A writ of mandamus is an extraordinary remedy that will not issue unless the petitioner demonstrates a clear and indisputable right to relief and a lack of alternative means to redress adequately the alleged wrong or obtain the requested action.  Kema v. Gaddis, 91 Hawaiʻi 200, 204, 982 P.2d 334, 338 (1999).  Such writs are not intended to supersede the legal discretionary authority of the lower courts, nor are they intended to serve as legal remedies in lieu of normal appellate procedures.  Id.

"Mandamus is the appropriate remedy where [a] court issues an order releasing confidential files . . . and the order is not immediately appealable."  Brende v. Hara, 113 Hawaiʻi 424, 429, 153 P.3d 1109, 1114 (2007) (quoting Kema, 91 Hawaiʻi at 205, 982 P.2d at 339).

"Discovery orders are not immediately appealable, but 'a petition for writ of mandamus is available for extraordinary

situations.'" Brende, 113 Hawaiʻi at 429, 153 P.3d at 1114, quoting Abrams v. Cades Schutte Fleming & Wright, 88 Hawaiʻi 319, 323, 966 P.2d 631, 635 (1998).

### III. Discussion

A. Medical Records Of Non-Parties Are Protected By The Constitutional Right To Privacy And By The Physician-Patient Privilege.

"The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest." Hawaiʻi Constitution, Article I, Section 6. The constitutional provision "relates to privacy in the informational and personal autonomy sense. The privacy right protected by the informational prong . . . is the right to keep confidential information which is highly personal and intimate." Brende, 113 Hawaiʻi at 430, 153 P.3d at 1116. "Health information is highly personal and intimate information that is protected by the informational prong of article I, section 6." Id.

"A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental, or emotional condition, including alcohol or drug addiction, among oneself, the patient's physician, and persons who are participating in the diagnosis or treatment under the direction of the physician, including members of the patient's family." HRE Rule 504(b).

8

The "communications" protected by HRE Rule 504(b) include communications "made by exhibition or by submission to inspection, as well as by oral or written narration or utterance."  State v. Moses, 103 Hawaiʻi 111, 123, 80 P.3d 1, 13 (App. 2002), citing 8 John Henry Wigmore, Wigmore on Evidence § 2384 at 844-45 (McNaughton rev. 1961).  "It is therefore well settled that the data furnished passively, through submission to inspection, are equally within the privilege."  Id.  The privilege "also [covers] information of a medical nature observed by the doctor in the course of diagnosis or treatment" and "is generally held to apply to medical records that contain information about which the doctor could not be compelled to testify."  Id., citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 514.12 [5][b] & [c] at 514-14 & 514-15.

The physician-patient privilege of HRE Rule 504(b), codified in HRS Chapter 626, is "[d]esigned to encourage free disclosure between physician and patient[.]"  HRE Rule 504 Commentary.  The privilege, "as with other statutory privileges, is a legislative balancing between relationships that society feels should be fostered through the shield of confidentiality and the interests served by disclosure of the information in a court of law."  Parkson v. Central DuPage Hospital, 435 N.E.2d 140, 143 (Ill. App. Ct. 1982).  "The information in [non-party]

9

patients' records . . . deserves the protection of confidentiality that the legislature envisioned."  Id.  "[T]o allow the disclosure of communications involving patients who are not parties to the litigation would neither serve a public interest nor the private interests of those non-party patients."  Id.

Petitioner Jennifer Naipo is not a party to Eshell Mitchell's lawsuit against the Yuens.  Her health information in her medical records at Wahiawa General Hospital is protected by her constitutional right to privacy.  The information also deserves the protection of the physician-patient privilege of HRE Rule 504.

B.    A Deponent's Disclosure Of Privileged Information Is Not Voluntary Unless The Deponent Makes The Disclosure After Having Been Expressly Advised Of The Privilege.

"A person upon whom [the HRE rules] confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the person's predecessor voluntarily discloses or consents to disclosure of any significant part of the privileged matter."  HRE Rule 511.  "Any intentional disclosure by the holder of the privilege defeats [the purpose of the privilege] and eliminates the necessity for the privilege in that instance."  HRE Rule 511 Commentary.  "Thus, a waiver analysis would focus on whether the disclosure was voluntary." Save Sunset Beach Coalition v. City and County of Honolulu, 102

Hawaiʻi 465, 485, 78 P.3d 1, 21 (2003), citing <u>Territory v. Cabrinha</u>, 24 Haw. 621, 626 (1919).

In <u>Cabrinha</u>, defendant Cabrinha was indicted for crimes on the basis of incriminating testimony he gave to a grand jury that was investigating him for the crimes and had subpoenaed him to appear before them for interrogation.  He appeared before the grand jury without counsel and was advised by the deputy attorney general, in the presence of the grand jury, that he could refuse to answer any questions propounded to him, where after he answered all questions without objection.  He moved, upon indictment, to quash the indictment on the ground that he had been compelled to be a witness against himself, in violation of his privilege against self-incrimination, without knowing that his conduct was under investigation.  The question of whether the indictment should be quashed was reserved to the territorial supreme court, which answered the question by addressing the dispositive issue of whether Cabrinha's testimony was voluntarily.  The court opined:

> We do not think the fact that the defendant was not told before giving his testimony that his own conduct was under investigation rendered his testimony involuntary since he was advised of his right to refuse to answer any question to which in his opinion might tend in any way to incriminate him.  He must be assumed to be a man of ordinary intelligence and to be able to differentiate between statements which would and those which would not tend to incriminate him.  Had he known that his own conduct was under investigation how could that knowledge have aided

11

> him in determining whether or not his answer to any given question might have a tendency to incriminate him? <u>When he was advised of his right to refuse to answer he was placed on his guard and if he failed to avail himself of his privilege he must be deemed to have waived it and to have testified voluntarily</u>, hence his constitutional privilege was not invaded.

24 Haw. at 626 (emphasis added).

Cabrinha determined that subpoenaed testimony on a privileged matter is voluntary, and the applicable privilege is waived, when the witness is expressly advised of the privilege and testifies without asserting the privilege. It is the rule to be applied to determine whether petitioner Jennifer Naipo, at her deposition, voluntarily disclosed, under HRE Rule 511, her treatment at Wahiawa General Hospital and whether she waived her physician-patient privilege on the matter.

Petitioner testified without counsel at her deposition. She was advised that she could refuse to answer questions that "invade[d] [her] personal privacy," such as questions "about [her] sex life or something like that." She was not advised -- by the advice given or otherwise -- that she could refuse to answer questions about the treatment of her physical condition. Absent such express advice, her disclosure, upon deposition, of her treatment for her arm injury at Wahiawa General Hospital was not a voluntary disclosure under HRE Rule 511. Consequently, the disclosure of such treatment was not a waiver of petitioner's physician-patient privilege on the matter.

C.    The Right Of Confidentiality Of Medical Records Under HRE Rule 504(b) Prohibits *In Camera* Disclosure To A Court.

"The sole justification for any rule of privilege is protection of a personal right of confidentiality that is recognized to be of greater societal importance than the principle of free disclosure of all relevant evidence in a judicial proceeding."  HRE Rule 511 Commentary.

Petitioner's medical records of her treatment at Wahiawa General Hospital are protected by her physician-patient privilege that was not waived.  Regardless of any relevancy of those records to the judicial proceeding before the respondent judge, petitioner's right of confidentiality under HRE Rule 504(b) prohibits any disclosure of her medical records,[2] including *in camera* disclosure to the respondent judge.[3]

## VI.  Conclusion

Petitioner's medical records of her treatment at Wahiawa General Hospital are protected by her constitutional right to privacy and by her physician-patient privilege that was

---

[2] We note that there is no indication in the record that *in camera* review may yield evidence that establishes the applicability of an exception to the privilege, cf. United States v. Zolin, 491 U.S. 554, 572-75 (1989), and thus we need not determine whether an *in camera* review would be appropriate in such circumstances.

[3] Because petitioners's medical records are protected by the physician-patient privilege that was not waived, petitioner's constitutional right to privacy of the records as balanced against Eshell Mitchell's competing interests in the records need not be addressed.

not waived.  Petitioner demonstrates a clear and indisputable right to a vacatur of the respondent's judge's February 9, 2011 order directing production of petitioner's medical records to the circuit court for *in camera* inspection.

The petition for a writ of mandamus is granted.  The February 9, 2011 order directing production of petitioner's medical records is vacated.  The respondent judge is directed to quash the November 22, 2010 subpoena duces tecum for production of petitioner's medical records.

| | |
|---|---|
| Richard B. Miller and Patricia Kehau Wall for Petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Michael Jay Green, Thomas M. Otake, and Diane K. Agor-Otake for Respondent Eshell Mitchell | /s/ Simeon R. Acoba, Jr. |
| | /s/ James E. Duffy, Jr. |
| | /s/ Rom A. Trader |



Diane Erickson
and Robyn B. Chun,
Deputy Attorneys General,
for Respondent The
Honorable Patrick W. Border