**\*\*\* FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCPW-17-0000927
04-AUG-2025
10:04 AM
Dkt. 111 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

Case No. 21908

STATE OF HAWAIʻI,
Plaintiff-Appellee,

vs.

JEROME ROGAN,
Defendant-Appellant.

-----------------------------------------------

SCPW-17-0000927

NICK GRUBE,
Petitioner,

vs.

THE HONORABLE ROM A. TRADER, Judge of the Circuit Court of the
First Circuit, State of Hawaiʻi, Respondent Judge,

and

STATE OF HAWAIʻI; ALAN AHN; and TIFFANY MASUNAGA, Respondents.

SCPW-17-0000927

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(1PC970001153) AND ORIGINAL PROCEEDING (CASE NO. 1PC151001338)

AUGUST 4, 2025

RECKTENWALD, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
AND CIRCUIT JUDGE VIOLA, IN PLACE OF DEVENS, J., RECUSED

OPINION OF THE COURT BY EDDINS, J.

Courts must "seal or otherwise remove" all records pertaining to a qualifying person's "judiciary files" from the "judiciary's publicly accessible electronic databases." Hawai'i Revised Statutes (HRS) § 831-3.2(f) (2014 & Supp. 2024).

HRS § 831-3.2(f) recognizes privacy and restorative interests for those arrested for, or charged with, but not convicted of a crime, those wrongly convicted, and those who have had a charge dismissed following a deferred acceptance of a guilty or no contest plea.

Jerome Rogan qualified "to seal or otherwise remove" his court records because his case ended without conviction. Alan Ahn qualified because a court granted a deferred acceptance of his no contest plea, and later per HRS § 853-1 (2014), the charges against him were dismissed.

Rogan and Ahn ask this court to seal their cases. Both had received expungement certificates from the Department of the Attorney General.

Nick Grube objects to Ahn's request.

2

We consolidated Rogan's and Ahn's cases and invited briefing from the Department of the Attorney General and the Office of the Public Defender.

HRS § 831-3.2(f)'s "seal or otherwise remove" language gives a court two choices. The court may remove the pertinent judicial files from the "judiciary's publicly accessible electronic databases" or it may seal the records. Because sealing impacts the Hawaiʻi Constitution's article I, section 4 right to public access, a court must comply with procedural and substantive measures if it decides to seal.

We hold that Rogan's and Ahn's judicial records must be removed from eCourt Kōkua, the judiciary's publicly accessible electronic database, but the judicial records must remain publicly accessible for in-person review at the courthouse.

**I.**

We start with HRS § 831-3.2, titled "Expungement orders."

HRS § 831-3.2 promotes privacy and restorative interests by avoiding the substantial effects disclosure of records may have on a person's employment, housing, lending, and educational options. See 2023 Haw. Sess. Laws Act 159, § 1 at 478 (amending HRS § 831-3.2(f) and identifying these interests in the preamble).

Hawaiʻi has a simple path to expungement relief. Per HRS § 831-3.2, expungement is available to those (1) "arrested for,

3

or charged with but not convicted of a crime"; (2) "found eligible for redress under [HRS] chapter 661B"; or (3) who had a charge dismissed after a deferred acceptance of a guilty or no contest plea.  HRS § 831-3.2(a); HRS chapter 661B; and HRS § 853-1(e).

Eligible persons may submit a "written application" to the attorney general or the attorney general's authorized representative to obtain an expungement order.  HRS § 831-3.2(a).  The Department of the Attorney General must then "issue an expungement order annulling, canceling, and rescinding the record of arrest."  Id.  The expungement order prompts county and state law enforcement agencies to forward the person's arrest records to the attorney general for placement in a "confidential file."  HRS § 831-3.2(c).  It also induces the attorney general or their authorized representative (Hawai'i Criminal Justice Data Center) to issue a certificate that allows the person to represent they have "no record regarding the specific arrest."  HRS § 831-3.2(e).

The legislature added subsection (f) to HRS § 831-3.2 in 2016.  The expungement statute no longer related to only arrest records.  A person with an expungement order could now ask the court to "seal or otherwise remove all judiciary files" associated with the arrest:

> (f) Any person for whom an expungement order has been entered may request in writing that the court seal or otherwise remove all judiciary files and other information pertaining to the applicable arrest or case from the judiciary's publicly accessible electronic databases.  The court shall make good faith diligent efforts to seal or otherwise remove the applicable files and information within a reasonable time.

2016 Haw. Sess. Laws Act 231, § 66 at 772-73.

Act 231 amended several laws related to criminal prosecution recommended by the Penal Code Review Committee.  2016 Haw. Sess. Laws Act 231, § 1 at 733-34.  In 2015, pursuant to House Concurrent Resolution No. 155, the Penal Code Review Committee convened to review and provide recommended revisions to the Hawai'i Penal Code.  Penal Code Review Committee, Report of the Committee to Review and Recommend Revisions to the Hawai'i Penal Code 1 (Dec. 30, 2015), https://www.courts. state.hi.us/docs/news_and_reports_docs/2015_PENAL_CODE_REVIEW_RE PORT-FINAL-12-30-15.pdf [https://perma.cc/5G9R-FPVH] (2015 Penal Review Report); H.C.R. No. 155, S.D. 1, 28th Leg., Reg. Sess. (2015).

As to HRS § 831-3.2, the Committee proposed amendments "so that persons who have obtained an expungement order may request in writing that the court seal or remove judiciary files or judiciary information from public access, including from the judiciary's electronic databases."  2015 Penal Review Report at 10.  The legislature rejected that approach.  Compare 2015 Penal Review Report at 73 ("seal or otherwise remove all judiciary

5

files and other information relating to the expunged offense, including from the judiciary's electronic databases, <u>from public access</u>") (emphasis added), <u>with</u> 2016 Haw. Sess. Laws Act 231, § 66 at 772-73 ("seal or otherwise remove all judiciary files and other information pertaining to the applicable arrest or case from the judiciary's publicly accessible electronic databases").

In 2023, the legislature revised HRS § 831-3.2(f). Effective July 1, 2025, the law now mandates that the judiciary seal or otherwise remove the case records for anyone with an expungement order. Requests for relief are no longer necessary. 2023 Haw. Sess. Laws Act 159, §§ 2, 4 at 478 ("The court shall seal or otherwise remove from the judiciary's publicly accessible electronic databases all judiciary files and other information pertaining to the applicable arrest or case of any person for whom an expungement order listing the court case number has been entered and transmitted to the court.").

In 2025, the legislature amended HRS § 831-3.2(f) again. It gives the Hawai'i Criminal Justice Data Center the authority to transmit expungement orders to the judiciary. Act 3, H.B. 145, H.D. 1, § 1 (signed Apr. 10, 2025). The amendment also provided that the "court's duties" do not apply "where the person for whom the order has been entered[] . . . [i]s only one of multiple defendants in the case at least one of whom has not

been the subject of a prior expungement order." Id. at § 2.

Citing HRS § 831-3.2, Jerome Rogan and Alan Ahn (Movants), both self-represented, filed letters with this court requesting to seal their case files. Those court records include frequently cited opinions. State v. Rogan, 91 Hawaiʻi 405, 984 P.2d 1231 (1999); Grube v. Trader, 142 Hawaiʻi 412, 420 P.3d 343 (2018) (Grube I).

Rogan's case is straightforward. In 1998, a jury found him guilty of four counts of sexual assault in the third degree. This court reversed Rogan's conviction. Prosecutorial misconduct tainted the case. It was so egregious that Hawaiʻi's double jeopardy clause, article I, section 10, prevented re-trial. Our courts and litigants have repeatedly cited Rogan. See State v. Hirata, 152 Hawaiʻi 27, 36 n.18, 520 P.3d 225, 234 n.18 (2022) ("From this point on, for appeals that allege prosecutorial misconduct, the briefs do not need to address the double jeopardy issue first identified in State v. Rogan[.]"). Because he was "not convicted of a crime," Rogan requested and received an expungement order. See HRS § 831-3.2(a).

Ahn's case has more procedural complexity. In 2015, a grand jury indicted Ahn, a former Honolulu police officer, and his girlfriend with drug-related crimes. Grube I, 142 Hawaiʻi at 418, 420 P.3d at 349. During the case, the circuit court sealed records pertaining to a closed hearing. Id.

7

Petitioner Nick Grube moved to unseal those records. The circuit court denied his motion. Id. at 419-21, 420 P.3d at 350-52. Grube filed writs of mandamus and prohibition, asking this court to unseal the records. Id. at 421, 420 P.3d at 352.

Grube prevailed. We ordered the circuit court to unseal the records. Id. at 429, 420 P.3d at 360. "[T]he public has a constitutional right of access to criminal proceedings generally, as well as the records thereof." Id. at 422, 420 P.3d at 353. Courts often cite to Ahn's case, Grube I, for the procedural and substantive requirements for closing courtrooms and sealing court records. See, e.g., Roy v. Gov't Emps. Ins. Co., 152 Hawai'i 225, 232-34, 524 P.3d 1249, 1256-58 (App. 2023).

Eventually, Ahn pled no contest and resolved his criminal case. At sentencing he moved to defer his plea. The court denied that request. Later, Ahn moved to reconsider. The court did. It granted his motion and deferred his plea. HRS § 853-1(a). In 2021, the circuit court discharged Ahn and dismissed the charges against him. See HRS § 853-1(c). Then, because he had a charge dismissed after a deferred acceptance of a guilty or no contest plea, Ahn requested and received an expungement order. See HRS § 831-3.2(a); HRS § 853-1(e).

Rogan and Ahn have moved to seal *all* their case records.

Rogan sent this court a letter requesting that, per HRS § 831-3.2, the judiciary seal his case, "dissociate[] [his name]

8

from future judicial research," and "redact[]" his name from "everything."

Ahn mailed a letter to the circuit court requesting that his court records be sealed. At a hearing with Ahn's counsel, co-defendant's counsel, and the deputy attorney general, the circuit court proposed creating separate case files so Ahn's case file could be sealed, while his co-defendant's case file remained accessible. No party objected.

Ahn then mailed a letter to this court: "I am writing to request that *all* my court records be sealed" per HRS § 831-3.2(f).

Years after this court decided Grube I, Ahn and Grube's legal clash rekindles. After Ahn asked this court to seal, Grube filed a position statement. The court should "interpret HRS § 831-3.2(f) narrowly to avoid infringing on the public's constitutional right of access and the Judiciary's authority to administer its own records and procedures." Ahn's position, Grube warned, "raises serious constitutional concerns."

We treated the letters to this court from the self-represented Rogan and Ahn as motions and consolidated the cases. Then we invited the Office of the Public Defender and the Department of the Attorney General (Amici) to submit amicus briefs. They did. For Grube, the Public First Law Center

(formerly the Civil Beat Law Center for the Public Interest) responded to those briefs.

Per our order, Amici and the Public First Law Center addressed:

> (1) Whether sealing the entire case file under HRS § 831-3.2(f) violates the public's right of access under the first amendment of the U.S. Constitution and/or article I, section 4 of the Hawai'i Constitution;
>
> (2) whether narrower remedies are available, short of a total sealing, that would protect the interests advanced by HRS § 831-3.2(f), and if so, what are those remedies; and,
>
> (3) the extent, if any, HRS § 831-3.2(f) encroaches on the Judiciary's independence and power to administer its own records. See generally Haw. Const. art. VI, §§ 1, 7; HRS §§ 601-5 (2016), 602-5.5 (2016).

## II.

### A.   HRS § 831-3.2(f) contemplates alternatives to sealing

HRS § 831-3.2(f) commands a court to "seal or otherwise remove all judiciary files and other information pertaining to the applicable arrest or case from the judiciary's publicly accessible electronic databases."

The Office of the Public Defender (OPD) argues that HRS § 831-3.2(f) requires the total sealing of judiciary files with no judicial review. As OPD puts it, HRS § 831-3.2(f) provides "[n]o other option" to sealing the case records.

The Department of the Attorney General takes the same position in its supplemental briefing: "sealing case files under HRS § 831-3.2(f) does not violate the public's right of access," so the court does not need to consider "whether narrower

10

remedies, short of total sealing, are available."  "The Court should apply the statute as written and grant the motions."

Grube maintains that the law allows remedies short of total sealing.  Otherwise, he says, HRS § 831-3.2(f) violates the public's article I, section 4 right to access court records.

Grube is right.

Statutory interpretation begins with the law's words. Alpha, Inc. v. Bd. of Water Supply, 154 Hawai'i 486, 490-91, 555 P.3d 173, 177-78 (2024).  Ambiguity arises when there is more than one plausible textual meaning.  Id.  To clarify ambiguity, we consider sources outside the text, such as legislative history and the purpose and spirit of the law.  Id. at 491, 555 P.3d at 178.  Statutory construction doctrines may also aid us. Id.

HRS § 831-3.2(f) reads, "seal or otherwise remove[.]" (emphasis added).  The import of the word "or" is clear.  It is a disjunctive that signals an alternative.  See State v. Kalani, 108 Hawai'i 279, 284, 118 P.3d 1222, 1227 (2005).  The statute does not require sealing.  There's another option – "remove" the judicial records from the "judiciary's publicly accessible electronic databases."

It is also clear that the "judiciary's publicly accessible electronic databases" refers to eCourt Kōkua, as it is the only database that matches the criteria.  Neither the Judiciary

11

Information Management System (JIMS) nor the Judiciary Electronic Filing and Service System (JEFS) is publicly accessible. JIMS is for court staff only; JEFS is for registered parties, attorneys, and staff. Generalized access routes through eCourt Kōkua. This leaves eCourt Kōkua as the only publicly accessible electronic database.

But the statute is unclear as to its definition of "otherwise remove." See HRS § 831-3.2. "Remove" means to "change the location, position, station, or residence of" or "eliminate" or "get rid of." *Remove*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/remove [https://perma.cc/M8SD-HARX].

Did the legislature intend "otherwise remove" to mean the equivalent of a total seal such that the public has no knowledge about a case's existence? Or did the legislature intend to limit online access while allowing the public on-site access? After all, records from non-confidential case files are not only available from the judiciary's publicly accessible electronic database, but are available on-site at courthouses across the state. See Hawai'i Electronic Filing and Service Rules Rule 1 (eff. 2010) (defining the Judiciary Information Management System (JIMS) and the electronic filing system within JIMS), Rule 11.1 (eff. 2010) (requiring the clerk to provide the public

12

with on-site access to the dockets and documents of non-confidential cases maintained in JIMS).

Given the statute's ambiguity, we turn to the legislative history.  Alpha, 154 Hawaiʻi at 491, 555 P.3d at 178.

The legislature did not mention subsection (f)'s purpose when it grafted it to Hawaiʻi's expungement statute in 2016.  See 2016 Haw. Sess. Laws Act 231, § 1 at 734; Conf. Comm. Rep. No. 138-16, in 2016 House Journal, at 1399, in 2016 Senate Journal, at 824-25.  The 2023 Legislature, though, offered context.  It expressed a restorative purpose to HRS § 831-3.2(f), one designed to forestall the long-lasting aftershocks posed by easy online access to court records.  The legislature identified adverse impacts to employment, housing, lending, and educational opportunities.  See 2023 Haw. Sess. Laws Act 159, § 1 (amending the law and identifying these interests in the preamble).

Neither the 2016 Legislature nor the 2023 Legislature adopted the 2015 Penal Code Review Committee's recommendation to prohibit all public access under subsection (f).  Compare 2015 Penal Review Report at 73, with 2016 Haw. Sess. Laws Act 231, § 66 at 772-73, and 2023 Haw. Sess. Laws Act 159, § 2 at 478.  Where the adopted law deviates from the recommendation, "all changes in words and phraseology will be presumed to have been made deliberately and with a purpose to limit, qualify or enlarge the adopted law to the extent that the changes in words

and phrases imply." See Levy v. Kimball, 51 Haw. 540, 544-45, 465 P.2d 580, 583 (1970).

The differences between the proposed language and the adopted language suggest the legislature had no intent to require automatic *sealing* under subsection (f). The legislature could have written the statute to remove all public access to the files, like the Committee recommended. It also could have written the statute to say "seal all judiciary files." But it did neither. Instead, it used the words "otherwise remove," suggesting removal is a narrower remedy than total sealing. The softened language implies the legislature did not intend HRS § 831-3.2(f) to have the broad sweep Amici claim.

This interpretation is also supported by the doctrine of constitutional doubt. "The doctrine of constitutional doubt, a well-settled canon of statutory construction, counsels that where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." Morita v. Gorak, 145 Hawai'i 385, 391, 453 P.3d 205, 211 (2019) (cleaned up).

Interpreting "otherwise remove" as synonymous with sealing raises constitutional questions. Under that interpretation, sealing is required. There's no other option.

14

But in that case, HRS § 831-3.2(f) necessarily invokes the public's article I, section 4 right to access court records. Applying the doctrine of constitutional doubt, we interpret "otherwise remove" as a narrower remedy, short of sealing, that is available under the statute. This construction of "otherwise remove" paves a way to avoid the constitutional questions raised by the other construction. And it still protects Rogan's and Ahn's interests.

Thus, the options are to either seal the judicial records or remove them from eCourt Kōkua. While "otherwise remove" remains ill-defined, the central point is that it encompasses a remedy short of sealing.

We hold that HRS § 831-3.2(f) offers options to (1) seal or (2) remove judicial records from eCourt Kōkua.

But this construction of the statute does not avoid article I, section 4 questions entirely. Because sealing is one option under the statute, we must determine whether the article I, section 4 public right of access attaches to expunged judicial records in criminal proceedings, and, if so, impart guidance on procedural and substantive safeguards.

Next, we turn to the first constitutional concern raised by the total and automatic sealing of judicial records: whether such sealing defies the public's right of access under article I, section 4 of the Hawai'i Constitution.

15

**B.    Automatic sealing under HRS § 831-3.2(f) implicates the public's right of access to court records under article I, section 4 of the Hawai'i Constitution**

Amici both contend that automatically sealing judicial records is constitutional.

Grube takes the opposite position.  He believes blanket sealing violates the public's article I, section 4 right to access court records.

Grube is right.

The Hawai'i Constitution provides that no law shall be enacted "abridging the freedom of speech or of the press[.]" Haw. Const. art. I, § 4.

When interpreting article I, section 4, this court "considers" the U.S. Supreme Court's First Amendment jurisprudence.  Oahu Publ'ns Inc. v. Ahn, 133 Hawai'i 482, 494, 331 P.3d 460, 472 (2014).  But like all our state constitutional provisions with federal counterparts, we independently interpret the Hawai'i Constitution.  Otherwise, we dishonor our constitution and overlook federalism principles.  State v. Wilson, 154 Hawai'i 8, 14, 543 P.3d 440, 446 (2024) ("Hawai'i's people are entitled to an independent interpretation of State constitutional guarantees. . . .  That means this court, not the U.S. Supreme Court, drives interpretation of the Hawai'i

16

Constitution.  If we ignore this duty, we fail to live up to our oath to defend Hawaiʻi's Constitution.") (cleaned up).

Here, there is no U.S. Supreme Court case to consider.  The Supreme Court has not decided a case involving the First Amendment's right of public access to court records where a prosecution ended without conviction and a former defendant wants to seal all case records.

Article I, section 4 of the Hawaiʻi Constitution grants the public "a constitutional right of access to criminal proceedings generally, as well as the records thereof."  Grube I, 142 Hawaiʻi at 422, 420 P.3d at 353.  See also Oahu Publ'ns, 133 Hawaiʻi at 506-07, 331 P.3d at 484-85.  This right "inheres in every member of the public" such that individuals may challenge sealings.  Grube I, 142 Hawaiʻi at 417, 420 P.3d at 348.  And it aligns with our state's "deeply ingrained traditional mistrust [of] secret trials."  Id. at 422, 420 P.3d at 353 (cleaned up).

Hawaiʻi has a rich history of public access to court proceedings, dating to the 1820s.  Sally Engle Merry, Colonizing Hawaiʻi: The Cultural Power of Law 70 (2000) ("A second major change in the system of law and legal procedure in the 1820s was the use of public trials by jury[.]").  At the end of the 19th century, Queen Liliʻuokalani recounted that, during her 1895 trial by military tribunal, the courtroom was "crowded with

17

curious spectators" including "a liberal representation from all classes."  Liliʻuokalani, Hawaiʻi's Story by Hawaiʻi's Queen 279 (1898).

Decades later, the Massie trial drew nationwide attention and regularly attracted a full courtroom.  See Russell Owen, Massie Jury Is Out, N.Y. Times, Apr. 28, 1932, at 1 ("It seemed that everyone in Honolulu wanted to enter the trial room this morning."); Russell Owen, Massie Takes Blame in Hawaiian Murder, N.Y. Times, Apr. 17, 1932, at 1 ("The entire roomful of spectators sat forward on their seats, oblivious to the heat and the discomfort of their crowded quarters[.]").

For sure, history and tradition alone do not drive the spirit of openness that animates article I, section 4.  "The Hawaiʻi Supreme Court values history and tradition to aid statutory and constitutional interpretation.  But unlike the United States Supreme Court, we do not subscribe to an interpretive theory that nothing else matters."  Wilson, 154 Hawaiʻi at 23, 543 P.3d at 455 (internal citations omitted).

Open courtrooms and accessible records are structural features of our judicial system.  The public's ability to watch court cases and check court records advances societal interests, like promoting transparency, ensuring fairness and accountability, enabling informed public discussion, and preserving the integrity of the judicial process.  Grube I, 142

18

Hawai'i at 422, 420 P.3d at 353 (article I, section 4 serves as a "safeguard of the integrity" of the judicial system); Oahu Publ'ns, 133 Hawai'i at 502, 331 P.3d at 480 (open courts offer an "assurance that the proceedings were conducted fairly to all concerned thereby promoting a perception of fairness") (cleaned up).

The judicial system gains from public access. Because court proceedings are open for all to see, and court records are available for all to read, a transparent approach instills confidence in, and respect for, the judiciary's work. Id. (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 594 (1980) (Brennan, J., concurring)).

Open proceedings curb misconduct. Since all participants are exposed to public scrutiny, accountability increases and injustice recedes. Id. (citing Richmond Newspapers, 448 U.S. at 569 (plurality opinion)); see also Times Mirror Co. v. U.S., 873 F.2d 1210, 1213 (9th Cir. 1989) ("[A] better-informed citizenry . . . tends to deter government officials from abusing the powers of government."). On the flip side, closed hearings and sealed records may hide prosecutorial or judicial misconduct from public view.

Amici argue that the presumptive right of public access expires when a case has a no conviction outcome. They say Commonwealth v. Pon, 14 N.E.3d 182 (Mass. 2014) supports the

19

idea that any benefits of openness are significantly diminished after a case ends.

But societal interests in open proceedings persist even after a criminal case ends. See Globe Newspaper Co. v. Pokaski, 868 F.2d 497, 503-04 (1st Cir. 1989). This court has often explained the right of public access continues after a case's conclusion. See Gannett Pac. Corp. v. Richardson, 59 Haw. 224, 235, 580 P.2d 49, 57 (1978) ("[A] complete record of those parts of the proceedings closed to the public shall be kept and made available to the public for a legitimate and proper purpose following the completion of trial or disposition of the case without trial."); Oahu Publ'ns, 133 Hawai'i at 507, 331 P.3d at 485 (stating that the public's qualified right of access to a transcript of closed proceedings persists even after the trial is completed); Grube I, 142 Hawai'i at 422, 420 P.3d at 353 (holding that the public has "a constitutional right of access to criminal proceedings generally, as well as the records thereof") (emphasis added).

Time does not determine whether a right of public access exists. Whether a proceeding is ongoing, concluded yesterday, or ended eighty years ago, is not decisive. Societal interests can endure. See, e.g., Korematsu v. United States, 323 U.S. 214 (1944); Korematsu v. United States, 584 F.Supp. 1406 (N.D. Cal. 1984).

20

For a right of public access to attach, the focus centers on the nature of the proceedings, not simply when a person makes a request to seal.  See Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty., 457 U.S. 596, 605 n.13 (1982) (explaining that the court must evaluate the State's interest in restricting access to a criminal proceeding which is presumptively open).  For example, outside criminal proceedings, the right of public access may not attach.  See, e.g., HRS §§ 346-45(a) (2015) (limiting those who may inspect family court records of adult protective proceedings); 571-84(a) (2018 & Supp. 2019) (mandating that certain family court records be withheld from public inspection); 571-84.6(b) (2018) (same, and providing that other family court records be presumptively open for public inspection).

But here, because the public has a presumptive right of access to criminal proceedings, the public does not forfeit its constitutional right to access the records of those proceedings when a defendant is not convicted.  See Pokaski, 868 F.2d at 507-09.

We hold that under article I, section 4 of the Hawaiʻi Constitution, the public maintains a presumptive right of public access to a criminal case's judicial records where the defendant was not convicted and obtained an expungement of their records.  See Grube I, 142 Hawaiʻi at 422, 420 P.3d at 353.  Where the

right of public access attaches, automatic restrictions on that right are constitutionally unsound. See id. See also Pokaski, 868 F.2d at 505-06.

Thus, nothing has changed. If Rogan and Ahn want to seal their cases, they must satisfy the procedural and substantive requirements article I, section 4 commands. See Oahu Publ'ns, 133 Hawai'i at 497, 331 P.3d at 475; Grube I, 142 Hawai'i at 423, 420 P.3d at 354.

Next, we examine this framework.

## C.    The public's right of access to court records is not absolute

The public's article I, section 4 constitutional right to enter criminal courtrooms and review judicial records is not absolute. Oahu Publ'ns, 133 Hawai'i at 496, 331 P.3d at 474.

The right of public access may be overcome in limited circumstances — situations where closure or sealing is necessary to protect an interest that outweighs the importance of public access. Grube I, 142 Hawai'i at 423, 420 P.3d at 354. Courts decide on a case-by-case basis: "individualized determinations are *always* required before the right of access may be denied." Globe Newspaper Co., 457 U.S. at 608 n.20.

To overcome the presumption of public access, procedural and substantive requirements must be met. Grube I, 142 Hawai'i at 423, 420 P.3d at 354. The procedural requirements are (1)

22

those objecting to sealing must be given a reasonable opportunity to be heard; and (2) the reasons that support sealing must be articulated in findings.  See id.

Here, the procedural requirements are not in play. Petitioner Grube has been heard.  We turn to the substantive requirements.  Grube says Ahn "has not satisfied the constitutional standards to seal this matter."

**1.    The substantive requirements to seal judicial records**

The substantive test that a court uses to address a request to seal court records involves whether (1) the sealing serves a compelling interest that overcomes the right of public access to the records; (2) there is a substantial probability that this interest would be harmed absent the closure or sealing; and (3) there are no alternatives to closure or sealing that would adequately protect the compelling interest.  See Grube I, 142 Hawai'i at 424, 420 P.3d at 355 (citing Oahu Publ'ns, 133 Hawai'i at 497–98, 331 P.3d at 475–76).

**a.    Compelling interest for sealing judicial records**

The compelling interest must be "an overriding interest" to the public's right of access, and the court must find that "closure is essential to preserve" the higher values underlying this compelling interest and "is narrowly tailored to serve that interest."  Oahu Publ'ns, 133 Hawai'i at 496–97, 331 P.3d at 474–75.

While a privacy interest may often prove compelling, the interest must be sufficiently consequential to "outweigh both the right of access of individual members of the public and the general benefits to public administration" granted by access to judicial records. See Grube I, 142 Hawai'i at 425, 420 P.3d at 356.

Where a defendant has obtained an expungement order from the attorney general, the privacy and restorative interests are usually important enough to override the public's right of access. But before a court seals judicial records, there must be individualized attention.

Here, sealing Rogan's and Ahn's records serves compelling privacy and restorative interests. Society benefits when a person is afforded a certain measure of privacy. Privacy grants a person the liberty to explore opportunities without the stigma attached to their judicial records. Hawai'i's people value fairness, kindness, and forgiveness. See HRS § 5-7.5(a) (2009). Through HRS § 831-3.2(f), the legislature has expressed the importance of privacy and restorative interests. That law has a laudable remedy. Easy access to judicial records may harm a person charged but not convicted of a crime. HRS § 831-3.2(f) curbs one-click access to judicial records for a good reason - to ease the adverse societal impacts for a person whose case ended without conviction.

Here though, we find these compelling interests do not overcome the public's constitutional right of access.

First, in most cases that qualify for HRS § 831-3.2(f) relief, public interest is slight. Our two cases, however, are far from routine. Both resulted in published opinions. Courts, including this one, have frequently cited them.

Second, the cases are different from other cases in which this court has recognized privacy rights. Rogan's and Ahn's privacy interests diverge from the privacy rights this court has recognized, like those involving medical and financial records. See Brende v. Hara, 113 Hawai'i 424, 430, 153 P.3d 1109, 1115 (2007). Medical and financial records have privacy protections. See id. (medical and financial records are "'highly personal and intimate' information" protected from public disclosure by the informational prong of article I, section 6 of the Hawai'i Constitution).

The judicial records here are public. Do court events, and the records that shape them, vanish due to HRS § 831-3.2?

No. The presumption of openness is strong. It is even stronger in cases of public importance. It defies the principles that fortify the right of public access — accountability, transparency, and the integrity of the criminal justice system — to automatically seal once-accessible judicial records, and thereby erase history and the public record.

For these reasons, Rogan's and Ahn's privacy and restorative interests are not compelling enough to overcome the public right to access their judicial records.

### b. Substantial probability of damage

To satisfy the second substantive requirement, "a court must find that disclosure is sufficiently likely to result in irreparable damage to the identified compelling interest." Grube I, 142 Hawai'i at 426, 420 P.3d at 357.  "[T]here must be a 'substantial probability' that disclosure will harm the asserted interest."  Id. (quoting Press-Enter. Co. v. Super. Ct. of Cal. for Riverside Cnty., 478 U.S. 1, 15 (1986)).  Further, the potential damage "cannot be fleeting or readily curable through remedial measures; it must be irreparable in nature."  Id. (citations omitted).

We accept that, like most cases under HRS § 831-3.2(f), there is a substantial probability that disclosure of Movants' case files will harm their respective privacy interests.

Movants satisfy the second substantive requirement for sealing.

### c. Narrow tailoring

Rogan and Ahn do not meet the third substantive requirement.

To satisfy that requirement to seal, a court must find "there are no [less restrictive] alternatives" that would

26

"adequately protect the compelling interest."  Id. at 427, 420 P.3d at 358; see also Pokaski, 868 F.2d at 506 (explaining that courts must determine whether the state has selected the "least restrictive means of promoting its objective").  Where there is a feasible alternative to total sealing that would both protect the right of public access and the compelling interest, courts must choose that alternative.  Grube I, 142 Hawai'i at 427, 420 P.3d at 358 (citing United States v. Brooklier, 685 F.2d 1162, 1172 (9th Cir. 1982)).

OPD maintains there is no alternative to total sealing.

Grube counters that there are less restrictive alternatives to sealing that would adequately protect the Movants' interests.

Grube is right.

We conclude there are narrower remedies available that protect Rogan's and Ahn's interests, such as removing their respective judicial records from eCourt Kōkua.  Thus, Movants fail to satisfy the third substantive requirement for sealing.

Next, we discuss a constitutional rationale separate from article I, section 4 that forecloses automatic sealing of criminal case records.

27

**D.    The separation of powers doctrine gives this court control over judicial records**

We hold that HRS § 831-3.2(f) encroaches on the judiciary's independence and power to administer its own records.

The Hawai'i Constitution vests judicial power with the courts.  Haw. Const. art. VI, § 1.  Article VI, section 7 gives this court the "power to promulgate rules and regulations in all civil and criminal cases for all courts relating to process, practice, procedure and appeals, which shall have the force and effect of law."  Haw. Const. art. VI, § 7.

Judicial power extends to procedural responsibilities such as control over judicial records.  See In re Dorothy D. v. New York City Prob. Dep't, 400 N.E.2d 1342, 1343 (N.Y. 1980) (noting that courts possess the power to control records of their own proceedings).

HRS §§ 601-5 (2016) and 602-5.5 (2016) set forth the statutory framework further fortifying the independence of the judiciary and the power of this court to determine the custody of all judicial files.  HRS § 602-5.5 grants this court the statutory authority to "determine whether, and the extent to which, the judiciary, will create, accept, retain, or store in electronic form any case, fiscal, and administrative records and convert written case, fiscal, and administrative records to electronic records."

28

HRS § 602-5.5's legislative history evinces a law crafted with separation of powers principles in mind.  The judiciary has the exclusive responsibility to maintain judicial records.  S. Stand. Comm. Rep. No. 1542, in 1997 Senate Journal, at 1477 ("Your Committee finds that as a separate and co-equal branch of government, the Judiciary should have the exclusive responsibility for maintaining its records.") (emphasis added).  The legislative history also reveals the intent to give this court "complete authority to promulgate rules for the use, retention, and destruction of all judiciary records."  H. Stand. Comm. Rep. No. 340, in 1997 House Journal, at 1242 (emphasis added).

Thus, the statutory framework governing judicial records aligns with this court's constitutional authority over judicial records under article VI, section 7.

Separation of powers concerns arise when one branch of government interferes with another's authority.  No single constitutional provision defines the separation of powers doctrine.  Alaka'i Na Keiki, Inc. v. Matayoshi, 127 Hawai'i 263, 275, 277 P.3d 988, 1000 (2012).  But in Hawai'i, this court recognizes the "sovereign power is divided and allocated among three co-equal branches."  Id.

The Department of the Attorney General claims there is no separation of powers issue because the legislature and the

judiciary have jointly governed the administration of court records throughout Hawai'i's history.  It says that the legislature has long mandated limitations on access to certain types of court records, so there's no intrusion.  See, e.g., HRS §§ 346-45(a) (restricting access to family court records of adult protective proceedings); 571-84(a) (requiring that certain family court records be withheld from public inspection); 571-84.6(b) (dictating which family court records are presumptively open for public inspection).

It also highlights that the judiciary has promulgated rules that recognize the restrictions set by sealing statutes.  See, e.g., Hawai'i Court Record Rules Rules 3.1 (eff. 2010) (stating that the court clerk shall maintain records "as required by statute or rule."), 10.1 (eff. 2010) (noting court records shall be accessible "[e]xcept as otherwise provided by statute, rule, or order"), 10.4 (eff. 2019) (restricting access to confidential files "[e]xcept as otherwise provided by statute or court rule or as ordered"); Hawai'i Family Court Rules Rule 7.2(b) (eff. 2022) (stating all documents in proceedings authorized by certain chapters of the HRS shall be sealed).

These arguments are unpersuasive.  Not only are the proceedings covered by those statutes and rules not at issue here, those proceedings are also substantively different from criminal proceedings.  Courts have historically recognized a

need for confidentiality in certain proceedings and recognized the societal benefits supporting that confidentiality. In short, there are historical and value-driven reasons why courts allow family court sealing.

None of the family-court-related statutes apply to criminal proceedings. And nothing suggests the legislature has the unilateral authority to determine how the judiciary maintains its own records. HRS § 831-3.2(f) provides for the total sealing of judicial records without judicial discretion. Eliminating judicial review, especially when that review covers constitutional dimensions, invades the judiciary's independence.

Rather than entrusting control of judicial records to both the legislature and judiciary, article VI, section 7 grants exclusive authority to the judiciary over its own records. Haw. Const. art. VI, § 7. Plus, this court possesses sole statutory authority to determine how to handle judicial records. HRS § 602-5.5. We hold that article VI, section 7 gives the judiciary the authority to exercise exclusive control over judicial records.

**E.    The practical solution**

HRS § 831-3.2(f) has admirable goals. We respect the privacy and restorative interests the legislature sought to address with HRS § 831-3.2(f). These interests are emblematic

of the "Aloha Spirit" that coats our state and guides this court. See HRS § 5-7.5(a).

We also recognize that HRS § 831-3.2(f) provides two options (1) seal or (2) remove from eCourt Kōkua.

Thus, we hold that Rogan's and Ahn's judicial records must be removed from eCourt Kōkua, but the judicial records must remain publicly accessible for in-person review at the courthouse. This removal obscures the subject case files from immediate and quick online public access. It thereby protects both the privacy and restorative interests advanced by HRS § 831-3.2(f).

This remedy satisfies HRS § 831-3.2(f) without dulling the public's constitutional right of access to judicial records under article I, section 4 of the Hawaiʻi Constitution. It also averts interference with the judiciary's article VI, section 7 powers.

To effectuate § 831-3.2(f)'s legislative intent, this court will soon promulgate rules to guide this removal process.

We stress that qualifying persons may move a court for selective redactions and sealing as to any case record. To comply with article I, section 4, courts must assess requests to seal under HRS § 831-3.2(f) on a case-by-case basis.

Where a defendant has obtained an expungement order from the Attorney General, the privacy and restorative interests are

typically compelling enough to override the public's constitutional right of access such that a total sealing of a case file is appropriate.  So we believe, in most cases, these interests will override the public's right to access.

### III.

We deny the motions in part as to the Movants' request to seal the judicial records, and we grant the motions in part to order the removal of all case records for Case No. 21908 and SCPW-17-0000927 from eCourt Kōkua.

| | |
|---|---|
| Robert Brian Black<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| Sara K. Haley<br>for amicus curiae The Office of<br>the Public Defender | /s/ Todd W. Eddins |
| | /s/ Lisa M. Ginoza |
| | /s/ Matthew J. Viola |
| Thomas J. Hughes<br>for amicus curiae Attorney<br>General of the State of Hawaiʻi | |

